## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ANTHONY QUINN WHEELER, JR.                   *

     Plaintiff,                                       *

                                                *

v.                                                        *                  Civil No. 23-1643-BAH

GIANT OF MARYLAND LLC,                        *

     Defendant.                                       *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiff Anthony Quinn Wheeler, Jr. ("Plaintiff" or "Wheeler") brought suit against Giant of Maryland, LLC ("Giant") alleging unlawful employment discrimination, creation of a hostile workplace environment, and retaliation in violation of both 42 U.S.C. §1981 and Title VII of the U.S. Civil Rights Act of 1964, 42 U.S.C. §2000. *See* ECF 23 (amended complaint), at 43 ¶ 2. Wheeler also alleges various state law claims, including wrongful termination, defamation, and unlawful wage deductions. *Id.* at 1. This case was originally filed in the Circuit Court for Baltimore County on May 10, 2023 and was removed by Giant to federal district court pursuant to federal question jurisdiction on June 20, 2023. *See* ECF 1 (notice of removal); 28 U.S.C. §1331.

Pending before the Court is Defendant's motion to dismiss for failure to state a claim (the "Motion."). ECF 29. Plaintiff filed an opposition, ECF 34, and Defendant filed a reply, ECF 35. All filings include memoranda of law and exhibits.[1] The Court has reviewed all relevant filings

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

and finds that no hearing is necessary.[2]  *See* Loc. R. 105.6 (D. Md. 2023).  Accordingly, for the

reasons stated below, the Motion is **GRANTED** as to Plaintiff's federal claims.  Plaintiff's state

law claims are **REMANDED** to state court.

## I.    BACKGROUND

Plaintiff was an employee of Giant at a location in Owings Mills, Maryland.  ECF 23, at

15 ¶ 4.  The incidents that give rise to this cause of action took place at his workplace between

June 2021 and November 2022.  *Id.* at 4–18.

On June 15, 2021, Wheeler was involved in a physical altercation with another employee,

Darian Newman ("Newman"), who, in the course of the fight, allegedly struck Wheeler and used

racial epithets.  ECF 23, at 4 ¶ 13.  Newman and Wheeler were laid off while Giant investigated

the incident and both were reinstated after approximately four weeks.  *Id.* at 5 ¶ 13.  According to

Wheeler, Newman continued to harass Plaintiff after both men were reinstated.  *Id.*

Wheeler also reports that, following the altercation, store managers "tampered" with his

back-pay from when he was absent during the investigation, resulting in no income for a period of

thirteen weeks.  ECF 23, at 5 ¶ 14.  Wheeler further alleges that he received false disciplinary

reports in the wake of the incident between him and Newman, noting in particular that his manager

at the time improperly disciplined him for not wearing a face mask correctly and for not completing

tasks quickly enough.  *Id.* ¶ 15.

---

[2] Wheeler has also filed some correspondence summarizing prior arguments and requesting subpoenas.  *See* ECF 33 (January 11, 2024 letter seeking a subpoena); ECF 38 (letter filed June 14, 2024); ECF 39 (letter filed July 18, 2024 and attaching an EEOC charge); ECF 40 (August 29, 2024 letter seeking a subpoena).  Pursuant to Local Rule 104.4, "discovery shall not commence...until a scheduling order has been entered."  Loc. R. 104.4 (D. Md. 2023).  No scheduling order has been entered in this case and Wheeler's premature requests for the issuance of subpoenas will be denied.

Wheeler also identifies a November 12, 2022 meeting with his manager Todd MacPherson ("MacPherson") as giving rise to claims for discrimination and harassment. ECF 23, at 16 ¶ 4. Wheeler reports that he called MacPherson at work on November 11, 2022, but MacPherson hung up the phone.  *Id.*  Wheeler alleges that when he returned to the store on November 12, he confronted MacPherson about hanging up during their conversation the previous day.  *Id.* at 6 ¶ 16.  MacPherson then allegedly responded, "who the [expletive] are you, coming in my office telling me what to do[?]"  *Id.*  Wheeler reports that he responded, "watch it, man," prompting MacPherson to say, "you're threatening me, I'm calling the police."  *Id.* at 6–7 ¶¶ 16–17. According to the police report, the text of which Wheeler copied into in his amended complaint, the responding officer noted the following:

> Mr. Wheeler entered Complainant MacPherson's office in the back storage area aggressively and stated, "Don't hang up motherfucker, I'll kill you, I'll get you outside or in the bathroom." Complainant MacPherson stated to Mr. Wheeler, "Don't you come in here and threaten me." Mr. Wheeler said to Complainant MacPherson, "I'll get you that's a fact." Mr. Wheeler left the store shortly after.

ECF 23, at 22. Wheeler was terminated following this incident. *Id.* at 7 ¶ 18.

At an unspecified date following his termination, Wheeler contacted his union representative, who informed him that an investigation into Wheeler's termination would be conducted. ECF 23, at 8 ¶ 20. The union was apparently able to secure Wheeler's reinstatement, with back pay, if Wheeler agreed to accept a transfer.  *Id.* at 8 ¶ 21.  However, in a phone conversation with Casandra Nitkowski ("Nitkowski"), a Giant human resources officer, Wheeler indicated he did not agree to the transfer.  *Id.* at 9 ¶ 22.  Subsequently, according to Wheeler, human resources personnel contacted the union representative to report that Wheeler had been "aggressive" during the call with Nitkowski, that he had been "drinking," and that he would not be reinstated. *Id.*

On February 16, 2023, Wheeler filed a complaint with the Equal Employment Opportunity Commission ("EEOC") regarding his termination from Giant. ECF 23, at 9 ¶ 24. Giant then contacted him to schedule a grievance meeting, which was held over the phone on February 28, 2023. *Id.* During this call, Wheeler reports that multiple Giant employees, including the assistant to the president of the company, stated that Wheeler had done "nothing wrong or inappropriate" and offered Wheeler reinstatement, back pay, and benefits at a new Giant location. *Id.* However, when Wheeler followed up with his union representative a few days later, he alleges that the representative informed him that his termination was final. *Id.* at 10 ¶ 24.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. Of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

4

Here, because Plaintiff brings this suit pro se, the Court must liberally construe his pleadings, holding them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This leniency has its limits, though. "A court may not construct the plaintiff's legal arguments for [the plaintiff], nor is a district court required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Runge v. Barton*, No. CIVA 6:08-0231-GRA, 2009 WL 3245471, at *1 (D.S.C. Oct. 2, 2009) (first citing *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)), *aff'd*, 368 F. App'x 361 (4th Cir. 2010)).

## III.   ANALYSIS

Wheeler's lengthy amended complaint appears to allege a variety of state and federal claims including unlawful employment practices, harassment, making false statements to the police, unlawful wage deductions, retaliation, promotion of a hostile work environment, and racial discrimination. ECF 23, at 1. Though Giant moves to dismiss all counts, the Court will focus on the claims that give rise to federal jurisdiction, namely Wheeler's discrimination, hostile work environment, and retaliation claims. In doing so, the Court relies on Mr. Wheeler's amended complaint alone and some of the document referred to in the amended complaint and subsequently provided by Defendant.[3]

---

[3] In evaluating a motion to dismiss, the Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)) (citation omitted) (emphasis omitted). Though Wheeler attaches some audio recordings to his opposition to Giant's Motion, Giant disputes their authenticity, and thus the Court is unable to consider them in its analysis. *See Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015). Giant attaches police reports to its motion that detail the altercations with Newman, ECF 29-2, at 2–6, and MacPherson, ECF 29-3, at 2–5. These reports are explicitly referenced in the amended complaint, and the Newman report is quoted verbatim by Plaintiff in

5

### A.    Employment Discrimination

Wheeler claims Giant unlawfully terminated his employment on the basis of his race in contravention of §1981 and Title VII. Title VII renders it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Though his discrimination claims are raised under both Title VII and § 1981, the Court will analyze them together. *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 219 (4th Cir. 2016) (noting that elements of discriminatory discharge based on race under Title VII and § 1981 "are effectively the same").

Wheeler cites to the 2021 incident with Newman (and its aftermath) as well as the November 2022 meeting with MacPherson as the factual support for his claims of racial discrimination. ECF 23, at 19 ¶ 4. At this early stage of the case, Wheeler need not allege "specific facts establishing a prima facie case of discrimination under the framework set forth' in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Westmoreland v. Prince George's Cnty.*, Civ. No. 09-2453, 2010 WL 3369169, at *3 (D. Md. Aug. 23, 2010) (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002)). Thus, Wheeler must only "plausibly allege that [he] was terminated '*because of*' [his] race, color, or sex to withstand a motion to dismiss." *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584–85 (4th Cir. 2015) (quoting 42 U.S.C. § 2000e–2(a)(1) (emphasis in *McCleary-Evans*). The Fourth Circuit has "cautioned that 'a well-pleaded complaint

the amended complaint. It is unclear to the Court whether Wheeler challenges the authenticity of the MacPherson report. Out of an abundance of caution, the Court has not reviewed the MacPherson report but has reviewed the Newman report as it is "integral to the complaint and authentic.'" *Fusaro*, 930 F.3d at 248. The Court notes, however, that its evaluation of the viability of the federal claims in the amended complaint would remain unchanged if the Newman report was also excluded as the report's text is largely copied into the amended complaint.

may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Felder v. MGM Nat'l Harbor, LLC*, No. 20-2373, 2022 WL 2871905, at *1 (4th Cir. July 21, 2022) (citing *Woods v. City of Greensboro*, 855 F.3d 639, 652 (4th Cir. 2017) (cleaned up)). The Court's inquiry at the motion to dismiss stage is limited to whether Wheeler alleges facts that plausibly state a violation of Title VII and §1981 "'above a speculative level.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (citing *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)).

Though a prima facie case is not required at this stage, "reference to the elements of a claim is helpful to assess whether the plaintiff has stated a plausible claim." *Allgaier v. Microbiologics, Inc.*, Civ. No. 22-01900-ELH, 2023 WL 2837336, at *8 (D. Md. Apr. 7, 2023). In the event of a lack of direct evidence of discrimination,[4] as is the case here, a claimant can establish a prima facie case of racial discrimination under either statute by showing: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action with respect to compensation; and (4) that similarly-situated employees outside the protected class received more favorable treatment." *White v. BFI Waste Services*, LLC, 375 F.3d 288, 295 (4th Cir. 2004).

Wheeler alleges membership in a protected class. ECF 23, at 3 (noting that he is "Black and African American"). Though it is far from conceded by Defendant, the Court will assume satisfactory job performance based on Wheeler's representation that he was employed at Giant for "approximately nearly 6 years" prior to his termination. *Id.* It appears Wheeler alleges two adverse

---

[4] Wheeler does allege that Newman uttered racial epithets during their 2021 altercation. ECF 23, at 15. However, Newman is not the subject of Plaintiff's claims, *see infra* n. 7, his supervisors are, and Plaintiff does not plead any direct evidence of discrimination on the part of Giant.

employments actions: harassment by Newman[5] and Plaintiff's ultimate termination by Giant

following an altercation with MacPherson. It is here where the amended complaint begins to falter.

Plaintiff alleges that Newman "harass[ed]" him after both Plaintiff and Newman were

reinstated following a suspension stemming from a fight at work. ECF 23, at 5. The Court

construes Plaintiff's amended complaint to allege that after Newman returned to work, Newman

said things to Plaintiff that were racially insensitive or outright offensive and store management

failed to act. *Id.* (alleging that Newman returned to work "shoulder to shoulder" at Giant with

Plaintiff and "harass[ed], stalk[ed], [was] racial again . . . ."). *Id.* However, it must be noted that

there are no factual allegations that these comments were known to Wheeler's supervisors or

condoned by them beyond the vague assertion that "store managers start[ed] cuddling around

[Newman] after his crime,"[6] a likely reference to Newman receiving some level of support after

he returned after the June 2021 alleged assault. ECF 23, at 5.[7] More importantly, Plaintiff points

---

[5] Plaintiff also appears to allege that a store manager named "Lisa Schepers" lodged "false disciplinary reports" against Plaintiff related to a failure to complete a work-related task and for failing to wear a mask during the COVID-19 pandemic. ECF 23, at 5-6. However, it does not appear that Plaintiff alleges these acts were racially motivated and Schepers was, according to Plaintiff, replaced by MacPherson. *Id.* at 6. As such, the Court does not construe any of the allegations related to Schepers as sounding in federal anti-discrimination laws.

[6] Of course, "[e]mployers are not vicariously liable for all of their subordinate employees' discriminatory actions." *Bandy v. City of Salem*, 59 F.4th 705, 710 (4th Cir. 2023) (citing *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 287 (4th Cir. 2004) (en banc), abrogated on other grounds by *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)); *see also Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 300 (4th Cir. 2010) ("We must of course be cautious about attributing to any ultimate decision maker . . . the most unfortunate expressions and beliefs of those around him and those who worked in his employ."). "Instead, employers are responsible only for acts of the 'actual decisionmaker' behind an adverse employment action, meaning the individual who 'was the one "principally responsible" for . . . the action.'" *Bandy*, 59 F.4th at 710 (citing *Hill*, 354 F. 3d. at 288–89).

[7] To be clear, Plaintiff alleges that supervisors was aware of that Newman allegedly uttered racially charged comments during the assault in June of 2021. ECF 23, at 11–12. Plaintiff arguably tries to allege that the assault itself was somehow condoned by supervisors. *Id.* at 25 (alleging that "[t]he [D]efendant allow[ed] [Newman] *to attack* and bully and to be racial in the work place")

to no adverse employment action taken by Giant against him that relates to Newman's behavior upon Newman's return to work after the assault. Plaintiff certainly alleges that he was bothered by Newman, an allegation that is the subject of a hostile workplace environment claim, but he makes no allegation that Newman's behavior "'adversely affect[s] the terms, conditions, or benefits of [Wheeler's] employment.'" *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (quoting *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). Without an adverse employment action, the Court cannot assess whether Plaintiff has properly pled "some connective thread between" the adverse action and Plaintiff's protected status. *Gough v. Rock Creek Sports Club*, Civ. No. PJM 19-3533, 2021 WL 795447, at *2 (D. Md. Mar. 2, 2021). As such, any federal claim based on Newman's return to work and subsequent behavior must be dismissed.

The bulk of Wheeler's discrimination claim, however, appears to rest on his construction of "who the [expletive] are you," the statement made by MacPherson[8] during their November 12, 2022 argument. ECF 23, at 7 ¶ 17. Plaintiff contends this phrase is inherently racially discriminatory because it directly implicates questions of "identity" and "race," thus supporting his contention that MacPherson terminated him according to a "racial standard." *Id.* at 24 ¶ 4. This Court is not aware of any precedent, in either the law or in common usage, which suggests that this common phrase is inherently racist. To be sure, there may be circumstances that would

---

(emphasis added). However, even if he was trying to allege that supervisors condoned the assault by Newman, Wheeler offers nothing more than a legal conclusion and rampant speculation in support and thus fails to make the requisite showing to maintain such a claim. *Bing*, 959 F.3d at 617.

[8] The Court will construe Plaintiff's amended complaint to allege that MacPherson participated in the decision to terminate Plaintiff, thus satisfying the requirement that Plaintiff allege an adverse employment action.

transform this query into one that could support a claim of racism, but Plaintiff does not allege such facts here to any degree that rises "above the speculative level." *Twombly*, 550 U.S. at 533. To the contrary, there is nothing alleged in the amended complaint to suggest that the question posed by MacPherson was deployed in a racially discriminatory way. Nor does Plaintiff allege that MacPherson said anything else which might be construed as racially discriminatory during or after the November 12, 2022 incident.

Wheeler also points to the alleged fact that all other parties involved in his termination are white as evidence of discriminatory conduct. ECF 23, at 31 ¶ 15. However, the mere fact that the apparent decision-makers are white, and Plaintiff is not, does not, by itself, meet the pleading requirements for a claim of unlawful employment discrimination based on race. *Henderson v. Maryland Transit Admin.*, Civ. No. 23-01267-JRR, 2024 WL 916253, at *8 (D. Md. Mar. 1, 2024) ("Here, Plaintiff alleges no facts to support a reasonable inference of race bias or discriminatory animus based on his race. Plaintiff states that he is African American but alleges nothing to suggest that any action taken by his supervisor was motivated by, or based on, race."). Stated differently, to the extent Wheeler alleges that his termination was based on race simply because of the racial makeup of those involved in the decision, Wheeler fails to "assert facts establishing plausibility of that allegation." *Coleman*, 626 F.3d at 191. In the absence of any other factual allegations that race was the reason for Wheeler's termination, his discrimination claim based on MacPherson's comments fails as it rests on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

**B.     Hostile Work Environment**

Wheeler also alleges that he suffered unlawful race-based harassment and promotion of a hostile working environment in contravention of both Title VII and § 1981. ECF 23, at 12 ¶ 28.

A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 272 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).   Under both Title VII and § 1981, the elements of a hostile workplace claim are the same:  a plaintiff must allege "(1) unwelcome conduct; (2) that is based on the plaintiff's race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Boyer-Liberto*, 786 F.3d at 277.

The Fourth Circuit has set "a high bar in order to satisfy the severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).  "Additionally, to plead that the environment is sufficiently severe or pervasive, a plaintiff must allege an objectively hostile workplace environment as well as that it was subjectively perceived by the plaintiff as hostile." *Milo v. CyberCore Techs., LLC*, Civ. No. RDB-18-3145, 2019 WL 4447400, at *6 (D. Md. Sept. 17, 2019) (citing *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 178 (4th Cir. 2001)).  The determination of whether an environment is objectively hostile requires consideration of the "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*  "Although the severity or pervasiveness of harassment can be a question of fact, a district court may dismiss a complaint that does not allege facts suggesting that the defendant's conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment." *Sunkins v. Hampton Roads Connector Partners*, 701 F. Supp. 3d 342, 352 (E.D. Va. 2023) (collecting cases).

11

In his amended complaint, Wheeler appears to identify two instances which he claims support his allegation of a hostile work environment. The Court considers each in turn.

### 1.   Incident with Newman and its Aftermath

As noted above, Wheeler alleges that Giant promoted a hostile work environment by "assisting" Newman after the June 15, 2021 altercation, specifically by reinstating Newman to his regular duties. ECF 23, at 5 ¶ 13, at 11 ¶ 27. Absent other details, Plaintiff's sole assertion that Giant allowed Mr. Newman to "re-enter the store" in order to "be racial" does not sustain a viable hostile workplace claim. *Id.* at 11 ¶ 27. It is true that Wheeler alleges that Newman called him racial slurs during the June 15, 2021 altercation, which is unquestionably egregious behavior. *Id.* at 4 ¶ 13.   However, Fourth Circuit precedent maintains that even an "egregious and unambiguously race-based incident" does not rise to the level of being sufficiently severe or pervasive as to give rise to a hostile workplace. *Belton v. City of Charlotte*, 175 F. App'x 641, 656 (4th Cir. 2006).   Moreover, the Fourth Circuit has cautioned that "[n]o employer can lightly be held liable for single or scattered incidents." *Sunbelt Rentals, Inc.*, 521 F.3d at 318.  Thus, a claim stemming solely from the June 2021 incident with Newman cannot survive as pleaded.

Even including the allegations that Newman was permitted to "re-enter [Giant] to stalk, and harass [and be] racial to the Plaintiff in the work-place," ECF 23, at 12, fails to provide enough factual detail to properly plead objective hostility.  Without information about *what* was said by Newman, *when* it was said, and *how frequently* it was repeated, the Court is left to impermissibly speculate as to whether Plaintiff has a right to the relief he is requesting. *McCleary-Evans*, 780 F.3d at 585.  Moreover, Plaintiff fails to allege how the comments interfered with Plaintiff's work performance, much more how such interference was unreasonable.  Plaintiff's claim of a hostile

work environment based on the Newman incident and Newman's behavior after his reinstatement fails.

      2.     Incident with MacPherson

Wheeler's contention that his altercation with MacPherson constituted a hostile work environment under Title VII and § 1981 similarly fails. *See* ECF 23, at 7 ¶ 17. First, as discussed, Wheeler offers no indication that MacPherson engaged in abusive conduct on the basis of Wheeler's race beyond Wheeler's speculative assertion that the question "who the [expletive] are you[?]" is inherently racialized. *Id.* There is likewise nothing in the amended complaint to suggest that the verbal altercation between MacPherson and Wheeler was anything more than a one-time disagreement and thus not sufficient to allege severity or pervasiveness. *See Belton*, 175 F. App'x at 657. The incident appears to resemble the "story of a workplace dispute" not cognizable under either Title VII or § 1981. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Regardless, this lone incident, even taken in conjunction with the Newman altercation, subsequent reinstatement, and Newman's vaguely alleged continued harassment, as articulated in the amended complaint, fails clear the "high bar" required to establish severe or pervasive conduct. *Sunbelt Rentals, Inc.*, 521 F.3d at 315. The harassment and hostile work environment claims are dismissed.

**C.    Retaliation**

Wheeler further alleges that his termination represented unlawful retaliation for engaging in protected activity in violation of both Title VII and § 1981. ECF 23, at 9 ¶ 22. For either a Title VII or a § 1981 retaliation claim to survive a motion to dismiss, a plaintiff must allege facts sufficient to show that (1) they "engaged in protected activity;" (2) their employer "took an adverse employment action against them;" and (3) their employer "took the adverse action because of the

13

protected activity." *Boyer-Liberto*, 786 F.3d at 281. In other words, the protected activity must

be "a but for cause of the alleged adverse action by the employer." *Univ. of Texas Southwestern

Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

"[I]n the context of a retaliation claim, a 'protected activity' may fall into two categories,

opposition and participation." *Navy Fed. Credit Union*, 424 F.3d at 406; *see also Pitter v.

Community Imaging Partners, Inc.*, 735 F. Supp. 2d 379, 395 (D. Md. 2010). Though Plaintiff

appears to allege that he may have been discriminated against for formally filing a Title VII

complaint and "for participating in an investigation," ECF 23, at 16, he provides no factual

allegations supporting this claim.[9] Thus, the Court will construe Wheeler's retaliation argument

as one alleging that he was terminated for opposing discriminatory practices, namely for speaking

up about alleged racial discrimination against him by MacPherson, Newman, and possibly others.

"An employer may not . . . take adverse employment action against an employee for

opposing discriminatory practices in the workplace." *Staggers v. Becerra*, Civ. No. ELH-21-231,

2021 WL 5989212, at *20 (D. Md. Dec. 17, 2021) (citation omitted). "To qualify as opposition

activity[,] an employee need not engage in the formal process of adjudicating a discrimination

claim." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (citation

omitted). "Opposition activity encompasses utilizing informal grievance procedures as well as

staging informal protests and voicing one's opinions in order to bring attention to an employer's

discriminatory activities." *Id.*

---

[9] Plaintiff does allege that he filed a "charge of discrimination" with the Equal Employment
Opportunity Commission (EEOC) on June 20, 2023. ECF 23, at 14. This report led to a
subsequent meeting described throughout the amended complaint as the "April Lee [g]rievance
meeting" occurring on February 28, 2023. ECF 23, at 9. However, the date Wheeler filed this
claim falls well after his termination in 2022 and thus cannot form the basis for his retaliation
claim.

Here, though the Court has pulled together the bare bones of a retaliation claim, it is unclear from the face of the amended what protected activity Wheeler actually engaged in. Wheeler claims he was terminated for "reporting [a] hostile work-place environment" to Nitkowski. ECF 23, at 15 ¶ 4. However, Wheeler fails to provide any additional details about how he made this report. *Id.* at 9 ¶ 22–23. He does not specify when he made the report, to whom he reported it, or, more importantly, what was reported. It is therefore difficult to determine whether Wheeler was engaged in a protected activity as he offers no evidence beyond his own conclusion to support such an inference.

Even assuming that Wheeler complained to Giant that MacPherson targeted Plaintiff for termination because of Plaintiff's race, Plaintiff offers no evidence to suggest that Giant terminated his employment in response to such conduct beyond "labels and conclusions" and "a formulaic recitation of the elements of a cause of action . . . ." *Twombly*, 550 U.S. at 555. This is likely because, by his own admission, Wheeler had already been terminated or, at least, placed on leave following his altercation with MacPherson. ECF 23, at 7 ¶ 18. Indeed, according to Wheeler, his meeting with Nitkowski was only to see if he would accept a transfer of location in exchange for reinstatement, which Wheeler refused. *Id.* at 8–9 ¶ 18. By his own admission, Wheeler's termination was likely based on the parties' lack of agreement to a reinstatement plan, not due to Plaintiff's complaints of discrimination at the hands of Giant employees. As to his retaliation claim, Plaintiff fails to allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). This claim is dismissed.

**D.     Remaining Claims**

Mr. Wheeler's remaining claims—including making a false police statement, unlawful

wage deductions, and other unlawful employment practices—are based in state law and are before

the Court pursuant to the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a).  Federal

courts "may decline" to exercise supplemental jurisdiction in certain circumstances including if

"the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3);

*Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001) (remanding where "[t]he

federal claim . . . had been disposed of . . . and State claims predominated").  The Fourth Circuit

"has emphasized that trial courts enjoy wide latitude in determining whether or not to retain

jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v.

Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).  In determining whether to retain supplemental

jurisdiction over state law claims, this Court must consider "the convenience and fairness to the

parties, existence of any underlying issues of federal policy, comity, and considerations of judicial

economy." *Id.*  After considering these factors, the Court declines to exercise its supplemental

jurisdiction over the remaining state law claims.

The remaining claims present no issues of federal policy and instead present only state law

questions that federal courts are cautioned to avoid. *See United Mine Workers of Am. v. Gibbs*,

383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of

comity and to promote justice between the parties, by procuring for them a surefooted reading of

applicable law. . . . [I]f the federal claims are dismissed before trial . . . the state claims should be

dismissed as well.").  With dismissal being granted on all federal claims, "state issues substantially

predominate . . . in terms of proof, . . . the scope of the issues raised, [and in] the comprehensiveness

of the remedy sought." *Id.* at 726–27.  The parties fail to articulate how they would be

16

inconvenienced by a return to state court. Discovery has yet to begin here and though the case has admittedly been pending for some time, it is still very much in its early stages. As such, the Court declines to exercise supplement jurisdiction over the remaining state claims and remands them the Maryland state trial court where this case originated.

## IV.   **CONCLUSION**

Even under the lenient standard of *Haines* afforded to pro se litigants, Wheeler fails to allege facts sufficient to support his claims of unlawful discrimination, hostile work environment, and retaliation under either Title VII or § 1981. For this reason, his federal claims are dismissed and the remaining state law questions are remanded to the Circuit Court for Baltimore County for further consideration.

A separate implementing Order will issue.

Dated: <u>September 11, 2024</u>                              /s/
                                        Brendan A. Hurson
                                        United States District Judge